UNITED STATES DISTRICT COURT             SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| CITIGROUP GLOBAL MARKETS, INC., | § | |
| | § | |
| Petitioner, | § | CIVIL ACTION H-05-3849 |
| *versus* | § | |
| | § | |
| DEBRA BACON, | § | |
| | § | |
| Respondent. | § | |

# Opinion on Arbitration Award

1.  *Introduction.*

A woman sued her bank for allowing her husband to transfer money from her retirement account without her authorization. An arbitration panel awarded her damages and attorney's fees. The arbitration award is vacated because the panel manifestly disregarded the law.

2.  *Background.*

    A.  *Restaurant.*

In April 1996, Randall and Debra Bacon opened multiple retirement accounts with Salomon Smith Barney, Inc. - now Citigroup Global Markets, Inc. Four of them were exclusively in Debra's name and funded by money she received at retirement from Amoco. The other accounts were in Randall's name or the couple's names.

About a year after opening their accounts, the Bacons told Smith Barney of their plan to open a restaurant. After discussing sources of capital for the business, they chose to take money out of their retirement accounts prematurely. From 1997 through 2000, Debra and Randall withdrew money over twenty times to pay business expenses.

As the funds were needed, Smith Barney would send a distribution request form to the Bacon's home. The couple would select an account, specify an amount, and return the form signed by the account's owner. Smith Barney would then disburse accordingly.

Smith Barney sent the Bacons monthly account statements describing each withdrawal.

    B.    *Collapse.*

The Bacons decided to open a second restaurant in July 2000. They individually guaranteed $350,000 in loans for the business and a new house. By the end of 2001, Randall's assets had been depleted. In addition to the debt incurred directly, the Bacons owed more than $100,000 in taxes.

Over the next six months, Randall signed Debra's name to five distribution requests without her express consent. Those funds were used to pay taxes and other business costs. In July 2002, Debra discovered the unauthorized withdrawals. She called Smith Barney, and it immediately froze her accounts.

Debra promptly filed for divorce. As part of the property settlement, Randall was to pay Debra more than $360,000. In late 2003, after Randall had paid Debra only minimal amounts, she brought an action against Smith Barney. She claimed Smith Barney was responsible because it had assisted Randall – causing the loss of her money.

    C.    *Arbitration.*

In 2004, the case was submitted to arbitration. The panel dismissed Smith Barney's claim against Randall as a third-party defendant and awarded Debra $218,000 in damages and $38,000 in attorney's fees.

Smith Barney has petitioned to vacate the award. It argues that the panel manifestly disregarded the law: (a) on causation for damages, (b) on customers' duty to report unauthorized withdrawals promptly, (c) on proportionate responsibility, and (d) on attorney's fees.

3.    *Standard of Review.*

Only a manifest disregard of the law warrants vacating an arbitration award. *See Wilko v. Swan,* 346 U.S. 427, 436-37 (1953). If a panel's decision is contrary to the clear requirements of the law, it cannot be said to be arbitrating a claim.

The fault in the decision needs to be more than a misunderstanding or an arguable misapplication of the law; the decision's lack of congruence with the law must have been easily perceptible by an arbitrator who had authentically participated in the proceedings. The arbitrators must have appreciated the governing principle but chose to eschew it. *Prestige Ford v. Ford Dealer Computer Servs. Inc.*, 324 F.3d 391, 395 (5th Cir. 2003).

To vacate an award, the ignored law must have resulted in an injustice material to the process or substance of the award. *Williams v. CIGNA Advisors, Inc*, 197 F.3d 752, 762 (5th Cir. 1999).

4. *Damages*.

Debra Bacon was not damaged by the unauthorized withdrawals. Randall used the improper withdrawals to pay her debts. They went to discharge jointly owed federal taxes, Debra's income taxes to South Carolina, and restaurant expenses. Because these expenses had been paid, the Bacons were able to sell the business in 2003 for $375,000 and to use that money to pay other personal and tax liabilities.

Because the money was not lost, there can be no damages, and Smith Barney's liability must be reduced to zero. *Trans-American Steel Corp. v. Fed. Ins. Co.*, 535 F. Supp. 1185, 1190 (N.D. Ga. 1982). The award ignored the law on causation. In the face of well-briefed, clear law and undisputed facts, the decision was plain wrong. *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 362-63 (5th Cir. 2004).

Moreover, because Randall promised to repay what he misapplied, Debra exchanged her asserted injury for a contract. It is just as if she had been robbed by an employee, from whom, when he was caught, Debra accepted a promissory note. She cannot revive the tort. Debra's money was not lost; it was used for her benefit. Having personally received the benefit of the monies withdrawn, Debra categorically fails to prove she was damaged by Smith Barney. Besides having direct benefit of the money being spent, she received a promise from her partner to pay her.

Debra has sustained no damages because her funds were used to satisfy *her* income taxes and keep *her* business afloat so that it could be sold to extinguish personal debts far exceeding the amount of the award. The award of $218,000 in actual damages amounts to a double recovery, with the potential for a triple recovery, since Randall has recently begun making payments to reimburse her for the "unauthorized withdrawals" under the Bacon's property settlement agreement.

5. *Commercial Code*

The panel consisted of three experienced lawyers who had extensively arbitrated. Although Smith Barney briefed and argued the requirements of Texas's law on accounts, the panel ignored its contents obdurately.

Customers of banks have a duty to discover and report unauthorized transactions in their accounts promptly on receipt of statements. TEX. BUS. & COMM. CODE ANN. § 4.406(c) (2002). If the customer discovers an unauthorized payment, she must notify the bank. In the event she fails to present the bank with the details within thirty days, she is precluded from asserting a claim for the unauthorized withdrawal. *Id.* § 4.406(d).

Here, Debra did not notify Smith Barney of any unauthorized disbursement until July 2002 – seven months after Randall withdrew $50,000 and five months after he withdrew $150,000. She insists that Randall hid the monthly statements from her. Whatever Randall did, Debra knew each month that she did not see a statement - and without checking- she was relinquishing her opportunity to object. She never asked Smith Barney for additional statements. She knew the status of the business generally, but she also did not inquire into the specifics of its operations or finances.

Debra says that Randall did not answer her questions or show her papers about the accounts. She chose Randall as her partner and allowed him to run the business largely without her - once it began failing. Smith Barney cannot be responsible for Randall's misconduct generally. Smith Barney cannot choose whether a client reads her mail or to whom she may delegate its being read. Debra has no evidence of Smith Barney's knowledge of Randall's defalcation. To contend that Smith Barney exercised discretionary control over the Bacon's accounts and knowingly permitted unauthorized withdrawals is absurd.

The panel can extend the thirty-day limit to one year if the customer can show that the bank acted in bad faith by paying the item negligently. *Id.* § 4.406(f). This is a fact question. All unauthorized withdrawals were reported within one year.
Here, the record demonstrates good faith on the part of Smith Barney:

- Smith Barney was informed by the Bacons that they would be using their IRAs to fund their business.
- After Debra authorized her husband to request the forms, they signed over twenty requests for distributions.
- Smith Barney required a signed request form for *every* distribution.
- Smith Barney's procedures do not require a signature verification or guarantee for an IRA distribution (the signed form is the only authorization needed, which is consistent with sound account management and the law).

- The money was distributed to a joint account over which both had signatory authority and authorized control.
- Smith Barney promptly confirmed each distribution, by consent letter to Debra from the manager and through monthly account statements.
- The moment Smith Barney was alerted to a claim of unauthorized activity, it froze Debra's accounts.

The Bacons chose how to deal with Smith Barney. In the years of the relationship, the Bacons withdrew from their savings, were notified to confirm the transaction, and spent the money. Smith Barney was ordinarily careful – commercially reasonable, too, for although these accounts were "personal," they were part of an acknowledged plan of business finance. It would be a metaphysical leap to conclude that Smith Barney was prudent and then say it acted in bad faith. Bad faith requires malfeasance – more than non- or misfeasance.

Accordingly, Debra's claims are barred by the passage of time without complaint, except for the last withdrawal of $18,000 in June 2002.

6.  *Proportion.*

For unauthorized withdrawals, the law requires the loss to be apportioned among the participants. This would be true for the $18,000 as well as the others. The panel was obliged, therefore, to assess the relative levels of care among Debra, Randall, and Smith Barney. *Id.* § 4.406(e). The panel should have evaluated the contribution to the loss of (a) a commercially reasonable bank, (b) a business partner who for eight months at least was willfully, wholly ignorant of her business and personal accounts, and (c) an admitted defrauding personal and business partner of the business woman.

Randall admits that he intended to mislead Smith Barney by forging Debra's name to the distribution requests. Smith Barney has proven, as a matter of law, that it was defrauded by Randall; however, the panel dismissed the third-party claim.

Because the arbitrators did not allocate the loss as required by law, even the most recent withdrawal - $18,000 - is not assessable against Smith Barney.

7.  *Attorney's Fees.*

Attorney's fees can only be awarded by arbitrators if (a) the arbitration agreement allows it, or (b) the law of the legal rights permits them. TEX. CIV. PRAC. & REM. CODE ANN. § 171.048(c).

If the matter of attorney's fees is submitted to the arbitrator, a court is without authority to modify the award. *See Monday v. Cox*, 881 S.W.2d 381, 385 (Tex. App.– San Antonio 1994, pet. denied).

The arbitration agreement between the two parties does not mention attorney's fees. Debra's complaint submitted to the panel, however, pleaded multiple legal theories that allow for fees. The award of fees may conceivably be grounded in Texas law, so they would be confirmed except that the success that was a predicate for them was unlawful. Because the fee award is supported by a faulty premise, it too must be vacated.

8. *Conclusion.*

With full exposure to the law's prescriptions, the arbitrators wholly chose to disregard it to make an award that worked a substantial injustice. Debra Bacon sustained no damage since the fraudulently withdrawn funds were used for her direct benefit.

The damages she was awarded were not assessed among the participants as the law clearly specifies. Although it is not directly involved, even the panel's dismissal of the third-party action is wholly inexplicable.

A lawless award must be vacated.

This analysis fully credits the facts as found by the panel.

Requiring damages for money that was not lost on a claim that was statutorily barred constitutes a significant injustice to Smith Barney. Smith Barney's motion to vacate the award will be granted. Debra Bacon's cross-motion to confirm the award will be denied.

Signed August 2, 2007, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge