**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CITIGROUP GLOBAL MARKETS,** | § | |
| **INC., f/k/a SALOMON SMITH** | § | |
| **BARNEY, INC., Movant,** | § | **CIVIL ACTION NO. H-05-3849** |
| | § | |
| **Vs.** | § | |
| | § | |
| **DEBRA M. BACON,** | § | |
| **Respondent.** | § | |

---

**DEBRA M. BACON'S RESPONSE TO AMENDED BRIEF
IN SUPPORT OF CITIGROUP GLOBAL MARKETS, INC.'S
MOTION TO VACATE ARBITRATION AWARD
(ON REMAND FROM THE FIFTH CIRCUIT COURT OF APPEALS)**

---

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Respondent, DEBRA M. BACON ("Debra") files this, her Response to Movant, Citigroup Global Markets, Inc. ("Citigroup")'s Amended Brief in Support of its Motion to Vacate Arbitration Award on remand from the Fifth Circuit Court of Appeals.

**I.**

**SUMMARY OF THE ARGUMENT**

When Respondent's husband, Randall, forged her name on $218,000 in distribution requests from her sole and separate 401(k) account at Salomon Smith-Barney (now Citigroup), Citigroup, in violation of its own internal procedures, failed to examine the signatures, and transferred the funds pursuant to Randall's forged distribution requests. After Respondent was awarded $218,000 plus attorney's fees in arbitration, Citigroup moved for vacatur, on the sole basis of "manifest disregard of the law," and this court, on the same singular basis, granted vacatur. Following *Hall Street Associates, L.L.C. v.*

1

*Mattel*, 128 S.Ct. 1396 (2008), the Fifth Circuit reversed. The Court has now directed this court to consider whether the "grounds asserted for vacating the [arbitration] award might support vacatur under any of the statutory grounds," *i.e.*, those set forth in 9 U.S.C. § 10(a)(2), (3) and (4).

Citigroup now argues that "manifest disregard" is a "label" for the statutory grounds in § 10. (Movant's Amended Brief, 3). This argument studiously ignores the Fifth Circuit's express statement that "manifest disregard of the law" is "no longer useful in actions to vacate arbitration awards." *Citigroup Global Markets, Inc., v. Bacon*, 562 F.3d 349 (5th Cir. (Tex.) 2009) (hereinafter, "*Citigroup v. Bacon*"). However, if the Fifth Circuit had concluded that one or more of the statutory grounds were properly alleged by Movant as a possible basis for vacatur on the previous appeal, then, presumably, it would have reviewed those grounds, and either affirmed or reversed vacatur. It ruled, instead, that the district court did not consider whether the "grounds asserted would support vacatur under any statutory grounds," and directed the court to do so. Slip Op., at 16.

In repeatedly failing to raise statutory grounds in the proceedings below, Movant repeatedly affirmed the adequacy of its complaint. The Fifth Circuit's opinion does not authorize Movant to amend at this late juncture, directly or by inference, and the time to do so has long passed. Movant is now foreclosed from raising any statutory grounds since it failed to do so previously. This court should therefore deny Movant's motion to amend, and affirm the arbitration panel's award. However, even if the Court improvidently grants Movant's motion to amend or considers it unnecessary, and accordingly reviews whether the underlying facts can support vacatur under §§ 10(a)(2), (3) or (4), the answer is still in the negative. Under New York law, which clearly applies

under the parties' contract, the panel's decisions are rationally inferable, on each contested issue.

The evidence demonstrates, first, that Citigroup's conduct in failing to examine the forged instruments was negligent and in bad faith; and second, that as a result, Bacon was harmed by an amount far in excess of the fraudulent withdrawals. Randall's ostensible use of the money for Debra's benefit and his subsequent promise to pay her back does not absolve Citigroup of fault under applicable New York law, nor does it support a right of setoff, a different allocation of damages, or a different apportionment of the loss. In short, Citigroup should properly bear exclusive responsibility for the face amount of the forgeries. Under New York, or Texas, law, Debra's claims were not barred by her failure to comply with the 30-day notice provision set forth in Uniform Commercial Code ("U.C.C.") §4.406, because Citigroup's negligence and "bad faith" in its failure to review Bacon's signatures extended the notice period to one year. Therefore, Bacon provided timely notice to Citigroup as to each of the instruments in issue. These facts and principles of law being the case, there is no evidence of statutory grounds of bias or "evident partiality" under § 10(a)(2); or of "misbehavior" or "misconduct" under § 10(a)(3); or, finally, that the panel "exceed [its] powers" under § 10(a)(4).

### A.

### CITIGROUP DID NOT ASSERT STATUTORY GROUNDS PRIOR TO REMAND.

This matter arises from events occurring primarily in 2003-04.Citigroup's motion for vacatur, which was filed on November 14, 2005, and consists of 338 pages, asserted "manifest disregard of the law" as the sole ground for vacatur. Citigroup's nine (9) filings

consistently referred to "manifest disregard"[1] as the only basis for vacatur, and when this court granted vacatur, it did so solely on the basis of "manifest disregard."  On appeal, Citigroup filed papers totaling 127 pages in length,[2] again with reference to "manifest disregard" only as grounds for vacatur. After the Supreme Court handed down its opinion in *Hall Street Associates, L.L.C. v. Mattel*, 128 S.Ct. 1396 (2008), the Fifth Circuit invited Citigroup to explain the impact of the *Hall Street* decision on this case. Once again, Citigroup relied exclusively on "manifest disregard," arguing that the impact of *Hall Street* was non-existent.  Prior to remand, the only ground asserted by the Movant was "manifest disregard of the law," although the statutory grounds were available. Now that this ground has been ruled "of no use," Movant is simply attempting to find a way to morph "manifest disregard" into § 10, even though the Supreme Court and the Fifth Circuit have rejected this rationale, the latter doing so in this very case.

---

[1] 11/30/05 Exhibits used in arbitration proceedings (Docket No. 7) [pgs 4126]; 11/30/05 Transcript of NASD Arbitration Hearing (Docket No. 10) [pgs 321]; 11/30/05 Arbitration Exhibits (Docket No. 11) [pgs 1177]; 11/30/05 Brief in Support of Motion to Vacate Arbitration Award (Docket No. 34) [pgs 35]; 11/30/05 Exhibits to Brief in Support of Motion to Vacate Arbitration Award (Docket No. 35) [pgs 80]; 01/05/06 Supplemental Brief in Support of Motion to Vacate Arbitration Award (Docket No. 13) [pgs 6]; 01/23/06 Reply to Response to Citigroup's Brief in Support of its Motion to Vacate Arbitration Award (Docket No. 18) [pgs 9]; 05/25/06 Letter from Andrew Harvin re Motion to Vacate Arbitration Award (Docket No. 20) [pgs 1]; 08/01/06 Supplemental Response in Support of Citigroup' Motion to Vacate Arbitration Award (Docket No. 23) [pgs 5].

[2] 02/14/08 Brief of Appelle Citigroup including attachments and Appendix [pgs 120]; 04/21/08 Response by Citigroup (Supplemental Authorities) [pgs 2]; 09/30/08 Supplemental Brief by Citigroup [pgs 3]; 12/12/08 Supplemental Authorities by Citigroup [pgs 2].

**B.**

**THE FIFTH CIRCUIT DID NOT AUTHORIZE THIS COURT TO ALLOW CITIGROUP TO AMEND ITS PLEADINGS TO ASSERT STATUTORY GROUNDS.**

The Fifth Circuit's opinion provides as follows:

We must VACATE the district court's judgment and REMAND for consideration in accord with the exclusivity of the statutory grounds.

The judgment of the District Court is therefore VACATED. The court, however, did not consider whether the *grounds asserted for vacating the award* might support vacatur under any of the statutory grounds. Accordingly, we REMAND for further consideration not inconsistent with this opinion.

Slip Op., at 16. (Italics and bolding supplied.)

As it stands, Movant did not assert statutory grounds for vacatur. *Moore v. Potter*, 275 Fed.Appx. 405, 411 (5th Cir. (Tex.) 2008) (conclusory allegations failed to raise any statutory defense under the F.A.A.).

Had the Court wanted to provide for Citigroup's right of amendment, it could have done so. It did not. Movants "cannot be allowed to continue to amend or supplement their leadings until they stumble upon a formula that carries them over the threshold." *Schultea v. Wood*, 27 F.3d 1112, 1117 (5th Cir. 1994), *citing Jacquez v Procunier,* 801 F.2d 789, 792 (5th Cir. 1986). Here, as in *Jacquez*, where the Movant repeatedly affirmed the adequacy of his complaint, *id.* at 793, Movant has repeatedly eschewed the opportunity to plead statutory grounds, and has crossed the threshold of waiver. *See also, Daly v. Sprague*, 742 F.2d 896, 901 (5th Cir. (Tex.) 1984) (supplemental pleading was precluded when the Court of Appeals remanded on specific and narrow grounds). The application of this principle to the case at bar is straightforward. The F.A.A.'s statutory grounds were as available in Citigroup's pursuant of this case in the prior proceedings as

they are at present. By its mandate, the Court of Appeals merely reasoned that if vacatur was granted by the district court upon full review of only one of multiple *grounds asserted,* then those statutory grounds not reviewed should now be given full consideration. However, no statutory grounds were previously asserted, and therefore, none should be reviewed. The right to amend has long passed.

In *In re MidAmerica Energy Co.*, 286 F.3d 486 (8th Cir. 2002), a public power district sought declaratory judgment that a sales contract required the buyer to make certain payments. The buyer counterclaimed to establish a right to recover amounts already paid. The district court granted partial summary judgment for the power district. The buyer appealed and the Eighth Circuit Court of Appeals reversed and remanded. The district court then allowed the power district to file an amended complaint in order to assert new theories of recovery as to the buyer's obligation to make payments. The Eighth Circuit reversed, granting the buyer's emergency petition for writ of mandamus to compel the lower court's compliance with the Court of Appeals' prior mandate. The Court of Appeals held that the power district was foreclosed from amending its complaint to assert new theories of recovery on the issue of the buyer's obligation to make payments. The Court held as follows:

> At no prior time during the pendency of this litigation in either the district court or in this court did [the power district] raise alternate allegations regarding any separate agreement or equitable theory of liability regarding [the buyer's] obligation to pay decommissioning costs. [Footnote omitted.] As a result, [the power district] is now foreclosed from raising in a second amended complaint alternate theories of liability requiring [the buyer] to pay estimated decommissioning costs.

*Id.* at 488.

At no prior time during the pendency of this litigation did Citigroup raise any statutory grounds for vacatur. As a result, Citigroup is now foreclosed from doing so. *Id.*

*See also, Henderson v. Stalder,* 407 F.3d 351, 354 (5th Cir. 2005) (district court exceeded scope of remand by allowing Movant, found by appellate court to lack standing, to amend its complaint in order to establish standing), *Kittelson v. Nafwari*, 234 Fed.Appx. 234, 235, 2007 WL 20212727 (5th Circ. [Tex.] 2007) (mandate rule bars re-litigation of issues not pursued in the district court); *United States v. Bell*, 988 F.2d 247, 250-51 (1st Cir. 2993) (review on remand of matter already decided would require exceptional circumstances, such as showing that controlling authority has changed dramatically); *United States v. Lee*, 358 F.3d 315, 321 (5th Circ. 2004) (mandate rule bars re-litigation of issues decided by the district court but foregone on appeal or otherwise waived, "for example because they were not raised in the district court."). *See also, U. S. Fidelity & Guaranty Co. v. Perkins*, 388 F.2d 771 (10th Cir. 1968) (when court of appeals' mandate issued without specific leave to amend, judgment of dismissal became final and motions to amend as a matter of right were not allowable); *Donahue v. City of Boston*, 371 F.3d 7, 16 (1st Cir. 2004) (remand order did not require allowing an amendment where no timely motion to amend had been filed); *Rolo v. City Investing Co. Liquidating Trust,* 897 F.Supp. 826, 833 (D.N.J. 1995) (remand order "does not contemplate that this court entertain a motion by Movants to file still another amended complaint which would reformulate and restructure their action."). *See also, Jaffke v. Dunham*, 352 U.S. 280, 281, 77 S. Ct. 307, 308, 1 L.Ed. 314 (1957) (since district court's ruling could have been upheld on any viable ground on appeal, argument on statutory grounds was waived on remand); *Skretvedt v. Dupont Nemours*, 372 F.3d 193, 203 (3rd Cir. 2004) (under law of the case doctrine, all matters that could have been raised on appeal are waived on

remand); *see also McKenna v. City of Philadelphia*, 511 F.Supp.2d 518, 528-29 (E.D.Pa.,

2007) (similar).

Movant's reliance on *Comedy Club, Inc. v. Improv West Assocs.*, 2009 WL

205046 (9th Cir.2009) and *Stolt-Nielson SA v. Animal Feeds Int'l Corp.*, 548 F.3d 85 93-

95 (2d Cir. 2008) is misplaced.[3]  Although noting the *ratio decidendi* of those cases, the

Court did not *agree* with either of these cases.  Instead, the Court stated, "Indeed, the

term itself ("manifest disregard of the law"), as a term of legal art, is no longer useful in

actions to vacate arbitration awards."  *Citigroup Global Mkts., Inc. v. Bacon*, No. 07-

20670, slip op. At 16 (5th Cir. Mar. 5, 2009) (parenthetical added).

## II.

## NO STATUTORY GROUNDS EXIST FOR VACATING THE AWARD

### A.    STANDARD OF REVIEW

Judicial review of an arbitration award is "exceedingly deferential." *American*

*Laser Vision v. Laser Vision Institute*, 487 F.3d 255, 258 (5th Cir. 2007). Vacatur is

available "only on very narrow grounds," *Brabham v. A.G. Edwards & Sons, Inc.*, 376

F3d 377, 380 (5th Cir. 2004). Federal courts must "defer to the arbitrator's decision when

possible." *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990). An

award must be upheld if it is "rationally inferable;" "failure of an arbitrator to correctly

apply the law is not a basis for setting aside an arbitrator's award." *American Laser*

*Vision, supra*, 487 F.3d at 259. A particular remedy "is given even more deference than

[the] reading of the underlying contract;" it is beyond the arbitrator's jurisdiction only if

---

[3] Movant's May 22, 2009, Amended Brief [Docket No. 45], p. 3.

there is "no rational way" to explain it. *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994).

## B.    FACTUAL BACKGROUND

Prior to 1996, Debra Bacon ("Debra") and her then-husband, Randall Bacon ("Randall") were each employed by Amoco in Houston, Texas[4] and each maintained separate 401(k) accounts.[5] In 1996, Randall met Brad Murrill ("Murrill"), a Citigroup financial advisor. Randall and Debra developed a relationship with Murrill[6] and each opened up separate IRA accounts at Citigroup with Murrill as broker.[7] Debra deposited $467,463.85 into four separate Citigroup IRA accounts.[8] The Bacons moved to South Carolina to operate a new pizza business, to be funded with early 401(k) withdrawals. They incorporated the pizza business in the name of their children, Allison & Drew, Inc. ("ADI"). Randall and Debra were 51% and 49% shareholders of ADI respectively. Except at the outset, Debra had nothing to do with business operations.

The first store was not successful. Randall opened another. The pizza business and financial problems and went from bad to worse.[9] At Randall's direction, Debra and he guaranteed $515,000 in business loans and lines of credit, two restaurant leases, an auto loan for Randall's vehicle, credit cards and related expenditures. Randall ultimately forged multiple distribution requests in order to pilfer $300,000 from Debra's separate

---

[4] Randall, 09/19/05 at 44:12-16; Debra, 09/19/05 at 174:10-11.

[5] Randall, 09/19/05 at 45:1-16:12 and Debra, 09/19/05 at 182:7-10.

[6] Randall, 09/19/05 at 45:15-19 and Debra, 09/19/05 at 176:8-177:7.

[7] Randall, 09/19/05 at 45:6-13, Randall, 09/19/05 at 46:7-9 and Debra, 09/19/05 at 181-184.

[8] Account Nos. 624-6A480, 624-6A479, 624-6A605, and 624-54997. (TR 09/19/05 at 98-100).

[9] Randall, 09/19/05 at 81:8-82:24 and Debra, 09/19/05 at 213:8-215:8.

IRA accounts at Citigroup, and $60,000 from her sole and separate severance pay accounts. He admitted to these figures in the PSA and confirmed them at arbitration.[10] Debra also incurred $82,000 in early withdrawal penalties as a result Randall's unauthorized withdrawals. The couples' obligations on restaurant leases, car loan and other related obligations were not quantified. As a result, Debra's quantified potential liability at the time of the divorce exceeded $900,000.[11] In addition to $515,000 in business obligations she lost $360,000 in unauthorized withdrawals, $82,000 in 401(k) taxes and penalties.

Randall acknowledged in the decree that he had unlawfully withdrawn $360,000 from accounts held by Debra and agreed to pay this amount, plus $36,000 in interest, and to reimburse her for other unliquidated damages, taxes, penalties and interest. Focusing exclusively on her Citigroup losses, Debra's $360,000 in retirement account losses, plus interest of $36,000, plus additional taxes and penalties on the early withdrawals of $82,000[12] totaled of $478,000. Of this amount, the panel awarded her only $218,000, the face amount of the forged instruments.

When Debra learned of the forgeries she filed for divorce. In the property settlement agreement between Randall and Debra (herein, the "PSA"), Randall agreed to try to sell the business, retire the outstanding business debts, and repay Debra $360,000,

---

[10] Docket #7, R. Ex. 38, pp. 9, 12-13; Randall, 09/19/05 at 90:10-12 and 09/19/05 at 102:9-11.

[11] $515,000 (business loans) + $360,000 (unauthorized withdrawals) + $82,000 (taxes and penalties) = $957,000. Since Randall used the money he stole from Debra's account to keep the business operating and kept losing more money, her losses attributable to Randall include this entire amount. The panel does not explain how it arrived at a figure of $218,000, although this equals the total of the forged instruments. The higher figures ($478,000 and $957,000) may also support the conclusion that the panel allocated fault.

[12] Arnie, 09/21/05 at 189:7-15.

plus $36,000 in interest[13] in monthly installments of $2,083.00. Whether any payments were actually made is unclear. The found in the initial hearing that that Randall had "recently begun making payments to reimburse [Debra] for the 'unauthorized withdrawals' [sic] under the Bacon's [PSA]."[14] However, Randall testified that he had paid back "<u>nothing</u>" on the unauthorized withdrawals under the PSA[15] and probably could not do so for several years.[16]

Randall used proceeds from the forgeries of $114,330 to retire taxes and penalties and used the remaining $103,670 in the business.[17] Prior to arbitration he sold the business for $375,000[18] and retired the joint business obligations of the parties.[19] Net of expenses, Debra received approximately $22,000 from the sale.[20] Nevertheless, Debra had received nothing on her unauthorized account losses as of the mediation. By all accounts, as of the arbitration, Debra's remaining losses included $360,000 in account deficiencies plus $82,000 in taxes and early withdrawal penalties,[21] for a total of $442,000, of which Randall had paid "nothing."

On March 15, 2004, Debra filed a claim for arbitration against Citigroup in

---

[13] Property Settlement Agreement, Docket #7, R.Ex. 38.

[14] Docket #24, Mem. Op'n., p. 3.

[15] Randall, 09/19/05 at 104:8-18 (emphasis supplied).

[16] Randall, 09/19/05 at 90:24-91:12.

[17] Arnie, 09/21/05 at 186:10-188:3. The record does not definitively establish whether this amount or any portion of it should be subtracted from, or added to, Debra's losses.

[18] Randall, 09/19/05 at 145.

[19] Randall, 09/19/05 at 145.

[20] Arnie, 09/21/05 at 184:13-185:9.

[21] Arnie, 09/21/05 at 188:11-189:12.

accordance with the Rules and Regulations of the NASD.[22] Pursuant to a Uniform Submission Agreement mandating the application New York substantive law,[23] a panel of three arbitrators heard the case, none of which were lawyers.[24]  According to the contract, the arbitration was "final and binding;" the arbitrators were not required to include findings of fact or legal reasoning; all claims and controversies were to be heard "only" by the panel; and the right to appeal was "strictly limited."[25]

Six (6) witnesses[26] testified at the hearing including experts on both sides on differing issues, totaling 794 pages of testimony. The hearing was transcribed and the parties submitted post-hearing briefs. Twenty-two (22) days after the conclusion of testimony, the panel issued a six-page decision awarding Debra compensatory damages of $218,000.00 and attorney's fees of $38,000.[27] As per the parties' agreement, the award did not contain findings of fact or legal analysis.[28]

In addition to the damage testimony summarized above, Debra offered expert testimony from Tom Gordon ("Gordon"), a tax consultant, that retirement funds are

---

[22] Statement of Claim, Docket #1, Appx. 1. The Citigroup contracts executed by Debra provided that the provisions and terms of the Citigroup contracts were to be construed in accordance with the laws of the State of New York. Docket #7, R. Ex. 11 at 0055.

[23] Docket #7, R. Ex. 11 at 0055.

[24] Arbitrators Dislosure Statement, Docket #19, Ex. 1. The arbitrators included (1) Henry R. Barracano, B.S., Penn. State U. (1948); 15 public (incl. 8 securities industry) awards; (2) Frank B. Fugate, B.S., Civil Eng., Va. Polytech. Inst. (1951); 5 public (incl. 4 securities industry) awards; and (3) Dolores Martin, M.B.A. – Finance, N. Tex. Univ. (1985), B.B.A. – Accounting (1974); 37 years' corporate and securities industry experience. *Id.*

[25] Docket #7, R. Ex. 11 at 0055-56

[26] Debra's witnesses included Randall and Dan Kirshbaum; Smith Barney's witnesses included Brad Murrill, Jane Mouser, Dennis Arnie, Tom Gordon and Andrew Harvin.

[27] See Kirshbaum, Docket #14, CL Ex 12 and TR 09/20/05 at 46:16-49:23.

[28] NASD Arbitration Award, Docket #1, Appx. 8.

exempt from creditors,[29] that exempt funds should never be used to retire tax liabilities since this results in an early withdrawal penalty in addition to income taxation[30] (amounting in this case to $82,000),[31] that one should never use retirement funds for purposes other than as security for old age,[32] that retirement funds are "tax free dollars,"[33] that the IRS generally does not normally require immediate full payment and that it is normally possible to negotiate with the IRS and/or to set up a payment plan,[34] and that Randall's conversions prevented Debra from pursuing these options.[35] Gordon also testified that Debra's retirement accounts were exempt from retirement of business-related losses.[36] There is no evidence in the record that Debra guaranteed the pizza business or any other specific business obligations Randall retired with stolen funds. Indeed, the record suggests that he may have used her money to retire obligations for which only he was liable.

## C.    THE PANEL DID NOT ISSUE ITS AWARD IN THE ABSENCE OF ACTUAL DAMAGES.

Even gross mistakes of fact or law[37] "do not authorize courts to annul awards," and "even if an award is arbitrary and capricious, this is not a ground for vacatur."

---

[29] *In re Coppola*, 419 F.3d 323, 327 (5th Circ. [Tex.] 2005) (qualified retirement accounts exempt from creditors in bankruptcy pursuant to 11 U.S.C. § 522(b), incorporating federal, state and local exemptions); TEXAS PROP. CODE ANN., § 42.0021 (qualified retirement accounts exempt from attachment, execution, and seizure for the satisfaction of debts). *See* also, Gordon, 09/20/05 at 18:10-13.

[30] Gordon, 09/20/05 at 41:8-42:6.

[31] Arnie, 09/21/05 at 188:11-189:12.

[32] *Id.*

[33] Gordon, 09/20/05 at 41:8-14.

[34] Gordon, 09/20/05 at16:6-9.

[35] Docket #24, Mem. Op'n., p. 3.

[36] See n. 29, *supra*.

[37] "Mistakes of law" include mistakes both in interpreting and in applying the law. *See Weber,* 455 F.Supp.2d at 549 (*quoting Mantle,* immediately *infra,* 956 F.Supp. at 726).

*Brabham v. A.G. Edwards & Sons, Inc.,* 376 F.3d 377, 382 (5th Cir. 2004); *Weber,* 455 F.Supp.2d at 549 (quoting *Mantle v. Upper Deck* Co., 956 F.Supp. 719, 726 (N.D.Tex.1997)). Rather, "[i]f an award is rationally inferable from the facts before the arbitrator, the award must be affirmed." *Kergosien, v. Ocean Energy*, 390 F.3d 346, 353 (5th Cir. 2004) (citing *Antwine v. Prudential Bates Securities, Inc.,* 899 F.2d 410, at 412).

1.    **The "one satisfaction rule" does not apply.**

The "one satisfaction rule" provides that an injured party is entitled to be compensated only once by the persons chargeable with injuring him. *See, e.g.,* RESTATEMENT (SECOND) JUDGMENTS, § 50, cmt. (e). *See also,* RESTATEMENT (SECOND) JUDGMENTS, § 50; RESTATEMENT (SECOND) TORTS, § 885(3); RESTATEMENT (SECOND) CONTRACTS §§ 293, 294(3), 295(3). However, if no payments have been made, no credits are applicable. Acceptance of a mere promise does not constitute satisfaction. RESTATEMENT (SECOND) TORTS § 885 ("a *payment* by one person liable for a loss diminishes the claim against the [other] tortfeasors, "*at least to the extent of the payment made*") (emphasis supplied); *Stecher v. 85th Estates  Co.*, 843 N.Y.S.3d 6, 11 (N.Y.A.D. 1 Dept., 2007) (citing *Perry v. Dickerson*, 85 N.Y. 345, 347-48 (1881)); *Stewart Title Guar Co. v. Sterling*, 822 S.W.2d 1 (Tex. 1991) (non-willful joint tortfeasors are entitled to a credit for *payments made*). It is satisfaction that invokes the rule, not the promise of payment. The panel may thus have concluded that Citigroup was not entitled to a setoff in exchange for Randall's mere promise of payment.

**2.     Since Debra had no control or input over the use of her money, the proper measure of her damages is the face amount of the forged instruments.**

Randall's use of the money he obtained from Debra's accounts for their joint benefit and his promise to repay her do not provide a basis for Citigroup to avoid her claims. Under New York law, where a Movant neither receives nor has control or input into the use to which the funds are applied, no setoff is allowed against a drawee bank for payment on a forged instrument, the proper measure of the bank's liability is the face amount of the instrument, and the liability of the bank is absolute. *Mouradian v. Astoria Federal Sav. And Loan*, 91 N.Y.2d 124, at 129, 689 N.E.2d 1385, 667 N.Y.S.2d 340, 34 UCC Rep. Serv.2d 267 (N.Y., 1997); *see also, Lawyers' Fund for Client Protection of State of N.Y. v. Bank Leumi Trust Co. of New York,* 94 N.Y.2d 398, 706 N.Y.S.2d 66 (N.Y., 2000). In *Mouradian*, a payee on checks forged by her husband brought suit against depository and drawee banks for conversion. The court was asked to determine "whether a drawee bank, sued for conversion under [N.Y.] UCC 3-419, is entitled to show that the payee received a benefit from the converted checks and therefore should recover less than their face value."[38] The Movant's husband, who admittedly forged her signature on three jointly payable checks, "claimed that the proceeds were used to make repairs to their fire-damaged house."[39] The wife was unaware of the extent of the damage or the repairs that had been undertaken. The court concluded that unless she actually received the money, the rule of absolute liability stated in UCC 3-419(2) "precludes inquiry into whether the payee, who has not recovered the funds, and did not have control over or input into how the funds were used, in fact benefited from the proceeds of the

---

[38] *Id.* at 127.

[39] *Id.* at 128.

checks. *Id.* at 127. In *Lawyer's Fund, supra,* the court held that, "as *Mouradian* makes clear, the critical inquiry is whether the Movant actually received all or part of the proceeds of the check, not whether a Movant received a possible benefit from the forger's misdeeds," *citing Kenerson v. FDIC.*[40] *Kenerson* contains an extended discussion by the First Circuit to the effect that when a drawee bank accepts a forged instrument, it "deprive[s] [the Movant] of her rights of ownership and place[s] the funds beyond her control."[41] On this analysis, the act of depriving Debra of her rights of ownership and placing the funds beyond her control was sufficient to support an award against Citigroup for the face amount of the instruments.

Applying New York law as required by the contract, the panel properly determined that the amount of Debra's damages was the face amount of the distribution requests. It also properly refused to allocate any fault against Debra or to reduce her damages. Like the movant in *Mouradian*, Debra had no knowledge of the forgeries or of the payment of taxes or business disbursements, never received any of the proceeds, and had no control or input into how the funds were used. Like the *Kenerson* Movant, she was deprived of ownership and the funds were placed beyond her control. The argument made by Citigroup to the effect that the money was used to her benefit was specifically rejected by these cases, as it was in the New Hampshire Supreme Court case cited by *Kenerson*, *True v. Fleet Bank*, 138 N.H. 679, 645 A.2d 671 (1994).

---

[40] 94 N.Y.2d at 401.

[41] 44 F.3d at 35.

### 3.    Apportionment is not allowed since it may be rationally inferred that Citigroup acted "knowingly."

Even if the one-satisfaction rule were otherwise applicable under the facts at bar, Citigroup is not entitled to claim a right of offset against Debra or Randall. The panel may also reasonably have concluded that Citigroup acted negligently and in "bad faith" under the New York (or Texas) U.C.C., as discussed *infra* at 21-24, or "knowingly," in failing to review the withdrawal request signatures. The well established majority rule is that contribution among "knowing" tortfeasors is not allowed. RESTATEMENT (SECOND) OF TORTS § 886(A)(3) & cmt. j (1977); *Ratner v. Sioux Natural Gas Corp*, 719 F.2d 801, 804 (5th Cir. [Tex.] 1983);  W. Prosser, THE LAW OF TORTS §50, at 308 (4th ed. 1971). "The basis of the rule is the old one that the courts will not aid one who has deliberately done harm, so that no man can be permitted to found a cause of action on his own intentional tort." RESTATEMENT (SECOND) OF TORTS § 886A(3), cmt. j (1977).[42] The testimony of Brad Murrill, discussed *infra*, at 19, shows that Citigroup made no attempt to review the forged signatures, despite the fact that discrepancies between the signatures were obvious. Moreover, Citigroup's conflicting testimony on this issue reasonably demonstrates negligent and "bad faith." In essence, had not Citigroup opened the barn door, the horse would not have escaped. Yet Citigroup's attitude was, "It's our barn but it's your horse. Go find it." The conclusion that Citigroup should bear the entire loss is rationally inferable upon these facts and obviates the need for apportionment.

---

[42] *Cf., Bolton v. Weil gotschal & Manges, LLP,* 806 N.Y.S.2d 443 (2005); *Schauer v. Joyce*, 54 N.Y.2d 1, 429 N.E.2d 83, 84 (1981);  (under New York law, contribution may be claimed as against any party whose conduct contributed to the tort, regardless of the underlying theory; liability apportioned under relative degrees of fault). Under New York law, the panel may have apportioned the damages in the present case on the basis of relative degrees of fault, as discussed *supra*, § 2(F)(ii). In no even can it be said that the panel engaged in a "manifest disregard" of the law with respect to allocation of damages.

### D.  THE PANEL HAD THE POWER TO DENY CITIGROUP'S THIRD-PARTY CLAIM AGAINST RANDALL.

Citigroup argues that the panel intentionally disregarded its third party claims against Randall, ignored his admission of liability for Bacon's losses (Brief, p. 12), and also denied Citigroup's alleged right to an award against Randall. In reality all the panel did was to dismiss Citigroup's third-party claims against Randall without prejudice.[43] The action by the panel could be interpreted in two ways. First, it may be that the panel did not intend to adjudicate the third-party claim against Randall on the merits. Second, and more likely, the panel may have concluded that Citigroup failed to meet its burden to demonstrate that Randall's conduct should result in a lessening of the obligations of Citigroup in response to Debra's complaint. It appears that the panel concluded that Citigroup's conduct was negligent, in "bad faith, and/or "knowing," and that Citigroup was not entitled to a setoff as a result, and dismissed Citigroup's third-party claims for this reason. The fact that the dismissal was without prejudice does not change the propriety of or factual support for the panel's conclusion that Citigroup should bear responsibility for its negligence. Had Citigroup acted in accordance with its own internal procedures, no damages would have befallen anyone.

### E.     THE PANEL FOLLOWED STATUTORY REQUIREMENTS.

### 1.     Debra's claims are not time-barred.

Under New York law, the mere fact that Debra lost her rights of ownership and control would result in a finding that her losses equaled the face amount of the forged instruments. This is the presumed amount of damages under New York law for negligent payment of a forged instrument, and the panel may have concluded that the presumption

---

[43] NASD Arbitration Award, Docket #1, Appx. 8

against Citigroup was not rebutted. Thirdly, Tom Gordon, a tax consultant, called by Citigroup, testified that the unauthorized withdrawal of $218,000 from Debra's retirement funds generated additional income taxes and penalties of $82,000.[44] Randall admitted in the PSA to having pilfered $360,000 in funds from Debra's accounts. The losses were arguably attributable exclusively, or at the least, primarily, to Citigroup's willful failure to examine the forged signatures in violation of its own internal policies. The panel could therefore have concluded that Citigroup's negligence contributed to Debra's losses of $478,000 or more[45] and then, allocated damages on a 55/45 basis as to Citigroup and Randall.  It may also have merely allocated the entire face amount of the distribution requests to Citigroup.

### 2.    The record is replete with evidence of Citigroup's negligence and "bad faith" failure to review the checks in issue.

Numerous facts support a rational conclusion that Citigroup acted negligently and in bad faith. These include the facts that Randall signed and submitted multiple forged requests;[46] that the Bacons' account representative was simultaneously managing well over than 100 accounts;[47] that her file was set up "completely" incorrectly, and was

---

[44] Arnie, 09/21/05 at 188:11-189:12.

[45] When one adds the additional damages that Debra suffered by Randall of $515,000 (not including leases, car loans and other obligations), but for which she was later repaid, it is possible to conclude that the panel placed the primary blame on Randall, gave him credit for the repayments already made, and placed either secondary, tertiary, or shared liability on Debra and Citigroup in awarding her $218,000. The conclusion that damages were not allocated is only the easiest way to solve this problem, not the only way. The point is that there are a myriad of ways that the panel's decision could have been arrived at as to the issue of allocation under the testimony before it, none of which worked a substantial (or any) injustice to Citigroup.

[46] Randall, 09/19/05 at 55:9-18.

[47] Kirshbaum, 09/20/05 at 57:9-13.

"horribly confusing;"[48] that to Citigroup's knowledge, a forged authorization was illegal;[49] that Debra's signature should have been reviewed by both the "operations" and "compliance" sections, and also, approved by management;[50] that the failure to do so was in violation of company policy;[51] that a single forged IRA distribution request for $165,000.00 inexplicably "got turned into three"[52] (*i.e.,* that a distribution request was copied internally by Citigroup without Debra's authorization to allow withdrawals from three of her separate IRA accounts); that the distribution requests did not raise any "red flags" with Debra's account manager, despite their size and proximity, and that he did not discuss them with her because it was "none of my business what someone does with [her] funds;"[53] and that, despite her repeated requests Citigroup refused to provide Debra with copies of the forgeries after they had taken place until she pursued formal discovery in arbitration, a circumstance which greatly delayed and impeded her efforts to determine how her losses had occurred.[54]

Additional facts supporting Citigroup's negligence and bad faith include that Debra's account contained her sole, separate retirement funds;[55] that she did not authorize Randall to have access to these accounts;[56] that Citigroup obtained signature

---

[48] Murrill, 09/20/05 at 259:5-15.

[49] Murrill, 09/20/05 at 117:11-118-1.

[50] Murrill, 09/20/05 at 104:14-105:12 and Murrill, 09/20/05 at 151:8-21.

[51] *Id.*

[52] Murrill, 09/20/05 at 212:19-220:24.

[53] Murrill, 09/20/05 at 202:6-19.

[54] Debra, 09/19/05 at 233:3-7.

[55] Debra, 09/19/05 at 182:1-10.

[56] Randall, 09/19/05 at 54:22-55:3, and Debra, 09/19/05 at 190:4-191:5.

cards from her,[57] ostensibly to be used in evaluating signatures; and that aspects of the signatures were not even "remotely" similar."[58] Signatures from two valid distribution requests are compared to a single encircled forged signature below.[59]



Citigroup honored the forged requests without even attempting to examine them for authenticity, claiming "no need" to do so.[60] But for such conduct, Randall would not have been unable to convert $218,000 from Debra's sole and separate retirement accounts. Further, while one Citigroup witness testified that non-review of the forged requests violated internal policy,[61] yet another testified that Citigroup "felt no need to look" and had no obligation to do so.[62]

### 3.    No right to offset.

Citigroup applies Texas law to argue that Bacon received the benefits of the forgeries, that she suffered no loss and that she "recovered" from Randall pursuant to a divorce property settlement decree in which Randall agreed to repay her (Brief, pp. 8-10). In the first place, Citigroup ignores the fact that New York law applies under the contract.

---

[57] Mouser, 09/20/05 at 89:21-24.

[58] Murrill, 09/20/05 at 148-151.

[59] Docket #7, R. Ex. 33 at Bacon v CGMI 2014, 2013 and Docket #7, R. Ex. 35 at Bacon v CGMI 2018.

[60] Mouser, 09/21/05 at 57:15-19.

[61] Murrill, 09/20/05 at 104:14-105:12; 09/20/05 at 151:8-21; *see also* discussion at n.55, *infra*.

[62] Mouser, 09/21/05 at 89:18-90:2, 09/21/05 at 58:24-59:5.

Under New York law, evidence that a bank's inspection procedures were so superficial as to offer no realistic opportunity to detect forged checks supported a determination that the bank acted without ordinary care in paying forged checks, such that the customer would not be precluded from asserting a claim against a bank for forgeries by its own failure to inspect the statement and canceled checks with reasonable care and promptness. *Putnam Rolling Ladder Co., Inc., v. Manufacturers Hanover Trust Co.*, 74 N.Y.2d 340, 546 N.E.2d 904 (N.Y., 1989). The *Putnam* court, after analyzing the shifting burdens of risk of loss under prior Sections 3 and 4 of the UCC, rejected application of comparative negligence principles and awarded the Movant the full amount of its claim.[63] In that case, the court noted that bank officers had only "four seconds" to examine checks.[64] Here, Citigroup "felt no need" to even review the instruments,[65] although arguably, internal policy obligated management to do so three times.[66] As in *Putnam*, the panel could have concluded that the bank should bear the full amount of the customer's losses. Furthermore, in *Putnam*, the customer failed to review its statements. In this case, Randall testified that he ran the business exclusively, received the statements from Citigroup, and he acknowledged that by his own design and actions, Debra was precluded from examining the account statements, *i.e.,* by the fraud and deceit of her own husband,[67] and further, Debra testified she reasonably relied on her husband to advise her

---

[63] 546 N.E.2d at 908.

[64] *Id.* at 906.

[65] Mouser09/21/05 at 89:18-90:2, 09/21/05 at 58:24-59:5.

[66] Murrill, 09/20/05 at 104:14-105:12; Murrill, 09/20/5 at 151:8-21. According to Murrill, signatures were to be reviewed by the "Compliance" and "Operations" departments and also approved by management.

[67] Randall, 09/19/05 at 87:7-89:1; Debra, 09/19/05 at 195:17-199:10.

truthfully as to their contents.[68] The panel may have rationally concluded that Debra was not negligent in failing to review the account statements since was relying upon her husband to manage the couple's pizza business, as well as their financial affairs, and this is supported by the fact that she divorced him immediately upon discovering the forgeries.[69] Under this analysis, either no allocation was necessary or, if the panel concluded that Debra's damages were higher than $218,000, *e.g.,* $478,000, it was inferentially allocated as between Citigroup ($218,000) and Randall (any remainder). In no event can the result constitute a willful inattentiveness to governing law.

A later New York case discusses *Putnam* after the state's adoption of UCC Articles 3 and 4. *Travelers Indemnity Co. v. Good*, 325 N.J.Super 16, 737 A.2d 690 (1999). In *Travelers*, the appellate court reversed summary judgment against Travelers because a fact question existed as to whether it had acted negligently in cashing forged checks submitted by a law firm employee. The court held that reasonable commercial standards "do not require the bank to examine the instrument *if the failure to examine does not violate the bank's prescribed procedures....*"[70] (Emphasis supplied). In this case, the testimony of Citigroup's own account representative was that it violated its own procedures. The court held that "on remand, the practice of the bank measured against its procedure must be considered." *Id.* at 696. Here, there was ample evidence for the panel to conclude that Citigroup violated its own policies in failing to review the instruments, acted negligently, willfully, and below reasonably commercial standards. The district

---

[68] Debra, 09/19/05 at 228:19-229:5.

[69] Debra, 09/19/05 at 199:8-10 and Docket #7, R. Ex. 39 at Bacon v CGMI 2751-52.

[70] *Id.* at 695.

court's finding that Citigroup "was ordinarily careful – commercially reasonable, too,"[71] flies in the face of this testimony. In this case the trial court not only disregarded the law, it also disregarded the damning testimony of Citigroup's own employees. The district court's conclusion that finding "bad faith" would take a "metaphysical leap," *id.*, is equally insupportable.

In *Weafri Well Services, Co. Ltd. v. Fleet Bank, National Ass'n.*, Not Reported in F.2d 2000, 2000 WL 1472724 (S.D.N.Y.), the district court engaged in a lengthy analysis of comparative fault under Articles 3 and 4 of the UCC, favorably citing *Putnam*. The *Weafri* court concluded that the UCC initially imposes strict liability on a bank that charges against a customer's account for a forged instrument, *id.* at *3, citing *Zambia Nat'l. Commercial Bank Ltd. v. Fidelity Int'l. Bank*, 855 F.Supp. 1377, 1386 (S.D.N.Y. 1994). Noting that conditions can exist which will shift the loss to the customer, including negligence and failure to examine statements, the court opined that the issues of whether the customer exercised ordinary care and thereby substantially contributed to the forgery "is a question for the finder of fact," to be decided on a case by case basis. *Id.* at *4 (citations omitted). The court concluded that New York's UCC § 4-406(3) "shifts the risk of loss back to the bank where the customer establishes that the bank failed to exercise ordinary care in paying the checks. *See Putnam*, 74 N.Y.2d at 346." *Id.* at *9. The record supports such a conclusion as to Citigroup's abject failure to examine the multiple forged distribution requests issued by Randall, in violation of its own policies.

Secondly, Citigroup also ignores the plain language of the Texas statute, to the effect that a limitations period of one year applies where the bank paid the item in issue

---

[71] Docket #24, Mem. Op'n., p. 5

negligently. The thirty-day limit is "extended to one year if the customer can show that the bank acted in bad faith by paying the item negligently. *Id.* § 4.406(f)."[72] The evidence supports a rational inference that Citigroup paid the forged requests negligently and in bad faith since it failed to review Debra's signatures in violation of its own internal policies. "This defense [*i.e.*, the thirty day notice rule] is not available when the bank has failed to exercise ordinary care in paying the items." *American Airlines Employees Federal Credit Union v. Martin*, 29 S.W.3d 86, 91 (Tex. 2000).

### III.

### <u>THE PANEL'S DECISION SHOULD BE AFFIRMED.</u>

In a catch-all, grab-bag argument that mistakenly equates "manifest disregard" with §§ 10(a)(1),(2) and (4), Citigroup argues that the panel exhibited "evident partiality" in violation of Section 10(a)(2), "exceeded their power," and "engaged in misconduct," in violation of Sections 10(a)(3) and (4), by alleged intentional disregard of governing law, displaying "sympathy," grant of a potential "triple recovery," failure to grant relief to Citigroup against Randall, failure to acknowledge that Debra benefited Randall's unfulfilled promises to pay her in the future, failure to apportion, failure to allocate, failure and failure to consider Citigroup's unspecified, and non-existent, "damages" (Amended Brief, p. 17-20). As addressed in detail above, each of these assertions is based upon one or more carefully constructed, but obviously erroneous, false premises – *e.g.,* that Citigroup, rather than Debra, was damaged; that there is no evidence that Citigroup acted negligently and in "bad faith;" that there is no evidence that Citigroup failed to follow its own internal policies and procedures; that there is no evidence that Citigroup

---

[72] Docket #24, Mem. Op'n.,p. 4.

paid $218,000 in error to Randall; that Debra suffered no damages; that the contract did not specify New York law; that the panel should have applied Texas law; that the 30-day rule of § 4.406 of the U.C.C.; and that the one-satisfaction rule applies to promises rather than payments. Citigroup also urges the court to disregard the reality that "manifest disregard" is no longer even a "useful term" under the law; to ignore the extremely narrow and limited scope of review contained in the opinion of the Court of Appeals. The Supreme Court and the law of this Circuit require a contrary conclusion.

A.    *Evident Partiality*. "Evident partiality," as set forth in §10(a)(2), takes place when an arbitrator fails to disclose a past relationship that might give the impression of possible partiality. *Positive Software Solutions, Inc., v. New Century Mortgage Corp.*, 476 F.3d 278, 286 (5th Cir. (Tex.) 2007), *citing Commonwealth Coatings Corp. v. Cont'l Cas. Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). There is no evidence of "evident partiality in this case. The first of two cases relied upon by Movant, *Applied Indust. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi*, 492 F.3d 132, 137 (2d. Cir. 2007) (Brief, p. 17) deals with an arbitrator's failure to disclose a customer relationship, with a party to an arbitration, *id.* at 137,  and the fact that a corporation in which he had an interest might be impacted by the outcome *Id.* at 139. The second, *Tinaway v. Merrill Lynch & Co., Inc.*, 658 F.Supp. 576, 579 (S.D.N.Y. 1987) involved circumstances where the trial court was "unable to infer a ground for the arbitrator's decision from the facts of the case." *Id.* at 579.  No such inability exists here.

B.    *Exceeded Power; Misconduct*. Citigroup's argument that the panel exceeded its powers and engaged in misconduct asserts that in failing to "adjudicate" the claims against Randall and issuing an award devoid in basis or law, the parties were

denied their right to a "fundamentally fair" hearing, relying on *Stolt-Nielsen SA v. AnimalFeeds Intern. Corp*, 548 F.3d 85, 95 (2d Cir. (N.Y.); *Grovner v. Georgia-PacificCorp.*, 625 F.2d 1289, 1290 (5th Cir. 1980); and *Home Indem. Co. v. Affiliated Food Distrib. Inc.*, Not Reported in F.Supp., 1997 WL 773712, at *4 (1997); as well as *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377 (5th Cir. (Miss.) 2004) at 385. Each of these cases is inapposite.

*Stolt-Nielsen* holds that a §10(a)(4) inquiry as to whether arbitrators "exceeded their power" in the post *Hall Street* context "focuses on whether the arbitrators had the power…to reach a certain issue, not whether the arbitrators correctly decided that issue," *Stolt-Nielsen, supra*, at 101 (citations omitted); "even where an arbitrator's explanation for an award is deficient, we must confirm it if a justifiable ground for the decision can be inferred from the record." *Id.*, 97 (citations omitted).

*Grovner, supra,* held only that "as long as it draws its essence from the collective bargaining agreement an arbitrator's decision on the merits is generally unreviewable unless the arbitration proceeding was substantially inadequate." 625 F.2d at 1290.

In *Home Indemnity, supra,* a pre-*Hall Street* case, an arbitration panel, without a hearing "or even a threshold review of the underlying dispute or its merits in relation to either party's cause," *id.* at *3, required one party to post a $472,627.62 letter of credit in order to proceed with discovery. The trial court found that the security order violated fundamental fairness. *Id.*, at *4.

*Brabham, supra*, which involved § 10(a)(4), discussed but declined to follow the fact that in the Third, Eighth and Ninth Circuits, where an award was "completely irrational," it could be vacated under a *quasi*-arbitrary-and-capricious standard. *Id.* at 382

(*held*: district court properly refused to vacate award under "manifest disregard," but improperly vacated under "arbitrary and capricious").

None of these cases provides any support for Movant's arguments under §§10(a)(2), (3) or (4).

## <u>CONCLUSION</u>

For these various reasons, the Motion for Leave to Amend and the Motion to Vacate filed by Movant, Citigroup Global Markets, Inc., should be denied, and the arbitration award should be affirmed in favor of Defendant Debra Bacon.

Respectfully submitted,


<u>/s/ Braden W. Sparks</u>
Braden W. Sparks
State Bar No. 18874500
8117 Preston Road
800 Preston Commons West
Dallas, TX 75225
214.750.3372
214.696.5971 Facsimile


/s/ <u>Daniel R. Kirshbaum</u>
Daniel R. Kirshbaum, Esq.
SBN 11533000

Axelrod, Smith & Kirshbaum
5300 Memorial Suite, 700
Houston, TX 77007-8292
Telephone (713) 861-1996
Facsimile (713) 552-0202
Drkirshbaum@aol.com

ATTORNEYS FOR DEBRA M. BACON

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of July, 2009, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Andrew Harvin, Esq.
600 Travis Street, Suite 4700
Houston, TX 77002
aharvin@drhrlaw.com
Attorney for Movant

Daniel R. Kirshbaum, Esq.
Axelrod, Smith & Kirshbaum
5300 Memorial Suite, 700
Houston, TX 77007-8292
Drkirshbaum@aol.com
Attorney for Debra M. Bacon

 I hereby certify that on the 2nd day of July, 2009, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. I further certify that on the same day, I served the undersigned with a copy of the document electronically filed as indicated below.

Mr. Randall Bacon
909 Texas #1803
Houston, TX  77002     Via randallbacon@yahoo.com


      /s/ Braden W. Sparks
      Braden W. Sparks, Esq.